## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| KYNDRA R. BOLDEN, individually and on behalf of others similarly situated, | ) ) ) **CLASS ACTION COMPLAINT** |
| Plaintiff | ) ) **FLSA COLLECTIVE ACTION** ) **COMPLAINT UNDER** ) **29 USC § 216(b)** ) |
| vs. | ) CASE NO. 4:24-cv-119 ) |
| RES-CARE, INC., d/b/a BRIGHTSPRING HEALTH SERVICES a/k/a NORMAL LIFE INC. | ) ) ) ) ) |
| Defendant | ) |

### *PLAINTIFF'S COMBINED CLASS ACTION AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES*

Comes now Plaintiff Kyndra R. Bolden ("Bolden"), individually and on behalf of others similarly situated, by counsel, and for her Rule 23(b)(3) Class Action and FLSA Collective Action Complaint against the Defendant Res-Care, Inc. d/b/a Brightspring Health Services a/k/a Normal Life, Inc. ("ResCare"), alleges and says:

### *I. STATEMENT OF THE CASE*

Bolden brings this class and collective action lawsuit against ResCare to address class-wide wage and hour violations committed by ResCare against its employees. Bolden will serve as both FLSA collective action representative and Rule 23 class representative for unpaid wage claims brought under the Indiana Wage Payment Statute.

Specifically, despite its obligation to do so under Indiana law and its promises to its

1

employees, ResCare is and has been refusing to pay accrued, unused vacation wages to its employees who voluntarily terminate their ResCare employment in the State of Indiana. Additionally, ResCare is and has been committing a series of FLSA overtime violations against its non-exempt employees by 1) failing to count "training" hours as overall hours worked when determining when an employee has worked in excess of forty (40) hours in a work week and is entitled to overtime compensation, and 2) failing to include "retention" bonuses in its employees' regular rate of pay when calculating overtime compensation due.

## II. FACTUAL ALLEGATIONS

1.      Bolden is a resident of the State of Indiana, and is domiciled in North Vernon, Jennings County, Indiana.

2.      ResCare is a provider of home and community-based health and companionship services that serves populations in need of specialized care. ResCare is headquartered at 805 N. Whittington Parkway, Louisville, Kentucky 40222, with more than 50,000 employees in the United States, including the State of Indiana.

3.      Bolden is a former employee of Res-Care, Inc. Bolden worked for Res-Care, Inc. from approximately August 2022 until she voluntarily resigned her employment in May 2023. Bolden first worked as a home caregiver for Res-Care, Inc. clients in North Vernon, Indiana. In approximately December 2022, Bolden was promoted to the position of Area Supervisor. Bolden's Area Supervisor duties for Res-Care, Inc. also covered work she performed for Res-Care, Inc. in North Vernon, Indiana.

4.      Before her promotion to her Area Supervisor position, Bolden worked for ResCare as a home caregiver. In this job, which she worked until the beginning of December

2022, ResCare paid Bolden an hourly rate of pay and paid her at an overtime rate of pay for most of her overtime hours. Bolden believes her last hourly rate of pay was $15.00 per hour.

5.      During the period of time she worked as a home caregiver and was an hourly-paid employee, Bolden regularly worked in excess of forty hours per week. She regularly earned and was owed overtime compensation for her overtime work.

6.      During this same time period Bolden worked as a home caregiver and was an hourly-paid employee (August 2022 to beginning of December 2022), Bolden worked and was paid wages in categories ResCare called "training" and "retention bonus."

7.      Bolden was paid for her "training" hours at her base hourly rate of $15.00 per hour. She was paid for this training work in August and September 2022. Importantly, pay stubs show that ResCare failed to include Bolden's "training" hours when counting Bolden's overall hours worked during the August and September work weeks and failed to pay the training hours at overtime rates of compensation (which would have been at least $22.50 per overtime hour worked). As a particular example, during the pay period from September 16, 2022 to September 30, 2022, Bolden worked at least 95.44 hours in the two work weeks. Bolden's work included 8.0 "training" hours that were paid at her base hourly rate of $15.00. All training hours were hours worked in excess of 40.0 hours during the work week that included the training. All 8.0 "training" hours should have been paid at an overtime rate of pay of at least $22.50 per overtime hour. In this one work week, Bolden was underpaid overtime by at least $60.00. When FLSA presumptive liquidated damages are applied, Bolden is owed at least $120.00 in FLSA damages for this one pay period.

8.      In the same or similar manner, on a nationwide basis, for all hourly-paid non-

3

exempt employees who worked in a ResCare "training" session and worked in excess of 40.0 total hours in the same work week, ResCare has failed and refused to count the "training" hours toward employees' overall hours worked and, in so doing, failed to pay overtime compensation for the training hours that should have been paid at time and one-half the employees' regular rate of pay under the FLSA. Stated differently, ResCare ignores its overtime obligations and fails to count "training" hours as overall hours worked and fails to pay the "training" hours at overtime rates of pay required by the FLSA.

9.    Similarly, Bolden earned a "retention" bonus of $500.00 which was paid to her in a check dated November 23, 2022. This "retention" bonus was earned and paid to Bolden by ResCare during the period of time Bolden was an hourly-paid home caregiver and Bolden was working significant overtime hours. As a specific example, in the pay period from November 1, 2022 to November 15, 2022 with a pay date of November 23, 2022, Bolden worked at least 97.48 hours and, of that total, ResCare treated 6.75 hours as overtime hours of pay. Bolden was also paid a "retention" bonus of $500.00. The $500.00 retention bonus was not figured into Bolden's regular rate of pay for purposes of calculating and paying Bolden her overtime compensation for her weeks worked in that November 1, 2022 to November 15, 2022 pay period, nor was the $500.00 retention bonus later calculated over a greater period of time to include the earned retention bonus in Bolden's regular rate of pay for overtime hours paid to her in the time period from August 1, 2022 to November 30, 2022. ResCare violated the FLSA overtime provisions by failing to include this earned "retention" bonus wage[1] into Bolden's regular rate of pay for purposes of paying overtime compensation. At a minimum, the $500.00 retention bonus

---

[1]See 29 C.F.R. § 778.211(c).

should have been included in Bolden's regular rate of pay and overtime compensation for the 6.75 overtime hours paid in the pay period from November 1, 2022 to November 15, 2022. Bolden worked at least 97.48 hours and was paid for 6.75 overtime hours. The $500.00 earned retention bonus should have been included in Bolden's regular rate of pay, increasing her regular rate of pay from $15.00 per hour to $20.13 per hour, which in turn required Bolden's overtime to be paid at the overtime rate of $30.20 per hour. ResCare paid Bolden 6.75 overtime hours at $22.50 per hour, for a total of $151.88. ResCare was obligated to pay Bolden 6.75 overtime hours at $30.20 per hour, for a total of $203.85. This failure to properly pay Bolden overtime resulted in an underpayment of at least $51.97 in the pay period. Applying the FLSA's presumptive liquidated damages, Bolden is owed at least $103.94 in FLSA damages for this overtime violation committed by ResCare.

10.     In the same or similar manner, on a nationwide basis, for all hourly-paid non-exempt employees who worked and earned a "retention" bonus and worked in excess of 40.0 total hours in the same work week the bonus was earned (or paid), ResCare has failed and refused to include the earned "retention" bonus wages in its calculation of employees' regular rates of pay when it calculated and paid overtime compensation. ResCare is and has been committing a series of FLSA overtime violations against its non-exempt employees by 1) failing to properly calculate employees' regular rates of pay when calculating and paying overtime compensation (when an employee has worked in excess of forty (40) hours in a work week and is entitled to overtime compensation) and 2) failing to include "retention" bonuses in its employees' regular rate of pay when calculating overtime compensation due.

11.     Bolden is pursuing a claim individually and on behalf of all similarly situated

Indiana employees of ResCare who earned and had unused, accrued vacation wages owed at the time employment was voluntarily ended (resignation). Bolden brings her vacation pay claim under the Indiana Wage Payment Statute.

12.    At all times she was employed by Res-Care, Inc., Bolden was an at will employee. Bolden was employed by ResCare from approximately August 2022 until she voluntarily resigned her employment in May 2023. Bolden resigned in writing to ResCare and offered her two weeks notice in the written communication.

13.    During Bolden's employment, Res-Care, Inc. had an Employee Handbook it provided to Bolden and her fellow Res-Care, Inc. employees. The Employee Handbook in effect at the time of Bolden's 2023 employment with Res-Care, Inc. was a 2023 version of the Employee Handbook that mentioned "Res-Care" and its companion company called "BrightSpring."

14.    Res-Care's Employee Handbook that was in effect during Bolden's Res-Care, Inc. employment from August 2022 through May 2023 promised "PTO" that Bolden accrued through her performance of work for Res-Care, Inc. Further, this 2023 Res-Care, Inc. Employee Handbook had a section about ending employment, but that section said nothing about losing or forfeiting the accrued vacation pay Bolden had earned but not used if she left her job with ResCare.

15.    This same 2023 Res-Care, Inc. Employee Handbook would have applied in 2023 to Bolden and all of Bolden's fellow Res-Care, Inc. coworkers.

16.    When Bolden voluntarily resigned her employment in May 2023, ResCare owed her at least 40.0 hours of accrued, unused vacation time (which it called "PTO"). For Bolden,

that 40.0 hours of accrued unused vacation time was worth approximately $914.00. Applying the liquidated damages provision of I.C. 22-2-5-2, Bolden is owed at least $2,742.00 in damages under the Indiana Wage Payment Statute.

17.     From the time she voluntarily resigned her employment with ResCare in May 2023, Res-Care, Inc. has refused to pay and it has not paid to Bolden any of her accrued, unused vacation time. That money is still owed to Bolden as of this date.

18.     Based upon information and belief, Bolden asserts and alleges that similarly situated Indiana coworkers who voluntarily resigned employment with ResCare while possessing accrued, earned vacation hours were not paid their vacation wages owed under the same or similar circumstances by ResCare. Despite Indiana law and ResCare's own policies, ResCare has been wrongfully and unlawfully retaining vacation wages owed to its former employees in violation of the Indiana Wage Payment Statute.

19.     ResCare has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages and overtime compensation through ResCare's illegal wage rules and practices. ResCare has intentionally, knowingly, with reckless disregard and systematically violated Bolden's and all similarly situated Indiana employees' rights to be paid earned, accrued vacation wages upon voluntary resignation from employment. Additionally, ResCare has intentionally, knowingly, with reckless disregard and systematically violated Bolden's and all similarly situated nationwide ResCare's employees rights to be paid overtime compensation in full by failing to include "training" hours in overtime calculations and by failing to include "retention bonus" wages earned in the regular rate when calculating overtime compensation owed, all in violation of the FLSA.

20.    Specifically, Bolden is alleging that ResCare is and has continued to act in bad faith, and not in good faith, when committing these FLSA and Indiana Wage Payment Statute violations against its employees.

### III.  FLSA COLLECTIVE ACTION ALLEGATIONS (Nationwide Collective Action)

21.    Bolden incorporates herein by reference paragraphs 1 - 20 above.

22.    This Complaint is brought as a collective action under the FLSA on behalf of Bolden and other current and former ResCare hourly-paid, non-exempt workers who were similarly denied payment of wages and overtime compensation under ResCare's compensation scheme that involved the improper calculation of regular rates of pay needed to properly calculate overtime rates of pay (which resulted in the underpayment of overtime compensation).

23.    This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Bolden and all ResCare current and former hourly-paid employees who were damaged by ResCare's compensation system which required and resulted in unpaid or underpaid overtime work.  By virtue of the "collective action," Bolden represents the identical and/or similar interests of former and current hourly-paid, non-exempt employees denied full overtime compensation under the same circumstance. Bolden anticipates that other ResCare employees and former employees will opt in to the action.

24.    The number of ResCare current and former employees who will be members of this collective action is so great that joinder of all members is impractical.  Instead, Bolden will pursue discovery to obtain the names of the other current and former ResCare employees who were paid wages in categories ResCare called 1) "training" and 2) "retention bns" (retention bonus), to provide notice of the collective action, and to offer the opt-in opportunity.

25.     Particularly with the types of overtime wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

26.     Bolden's claims are typical of the claims of the whole collective group of current and former hourly-paid employees harmed by ResCare's illegal overtime calculation and payment practices.

27.     Bolden will act to fairly and adequately protect the interests of the entire collective group of current and former ResCare hourly paid, non-exempt employees.

28.     A collective action is superior to other available means for the fair and efficient prosecution of these wage claims against ResCare. For example, to prove ResCare's illegal overtime practices, Bolden and other members of this collective group would seek in discovery records about all similarly situated current and former ResCare hourly paid, non-exempt workers who were paid in wage categories ResCare called 1) "training" and 2) "retention bns" and who were similarly denied full, earned overtime compensation.  Individual lawsuits by the members of the collective group could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

29.     A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the types of FLSA wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not,

because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

30.    A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### IV.  CLASS ACTION ALLEGATIONS (Indiana-Only Class Action Claims)

31.    Bolden incorporates herein by reference paragraphs 1 - 30 above.

32.    Bolden's claims for unpaid vacation wages are brought as a Rule 23 class action under the Indiana Wage Payment Statute on behalf of other former Indiana-based ResCare employees who voluntarily resigned employment, were owed unused, accrued vacation wages, but who were similarly denied payment of vacation wages after resignation.

33.    With respect to FRCP 23(b)(3) class action claims, Bolden will serve as class representative over the following class:

> Bolden will serve as class representatives for the class-wide claims brought under the Indiana Wage Payment Statute. This Court has supplemental jurisdiction over Plaintiff's Indiana statutory wage claims. This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Bolden and on behalf of all eligible ResCare former employees (who voluntarily resigned) who were damaged by ResCare's compensation system which refused to pay earned, accrued vacation wages to resigning employees. By virtue of the class action, Bolden represents the identical and/or similar interests of former Indiana coworkers denied accrued vacation wages under the same circumstances.

34.    The number of ResCare former Indiana employees who will be members of this class action is so great (numerosity) that joinder of all members is impractical.  Instead, Plaintiff will pursue discovery to obtain the names of the other former ResCare Indiana employees, to provide notice of the class action and to offer the opt-out opportunity.

35.     Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire class.

36.     Bolden's claims are typical of the claims of the whole class of former Indiana-based ResCare employees harmed by ResCare's illegal wage practices.

37.     Bolden will act to fairly and adequately protect the interests of the entire class of former Indiana-based ResCare employees.

38.     A "combined"[2] collective action/class action is superior to other available means for the fair and efficient prosecution of these wage claims against ResCare. For example, to prove ResCare's illegal wage practices, Bolden and other members of this collective group/class would seek in discovery records about all similarly situated current and former ResCare employees who were similarly denied earned wages and overtime compensation under ResCare's illegal wage practices, all of which harmed its employees.  Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

39.     A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of Indiana statutory wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under Indiana law, or

---

[2]See *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-974 (7th Cir. 2011)

may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

40.     A combined collective action/class action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

41.     Because ResCare's compensation system which required and resulted in uncompensated work and unpaid overtime compensation results in wage violations that trigger issues of both federal and state law, this cause of action presents the ideal factual scenario supporting the Court's exercise over the supplemental state law claims, as common state and federal law issues predominate.

### V.  JURISDICTION AND VENUE

42.     This Court has jurisdiction over Bolden's FLSA claims under 28 USC § 1331 as those FLSA claims raise a question of federal law.  See 29 USC § 201 et seq.   The Court has supplemental jurisdiction over Bolden's Indiana law claims, which have a common basis in fact with her own and the other Plaintiff class members' FLSA claims.

43.     This Court is the appropriate venue for this cause of action as Bolden worked for ResCare in Jennings County, Indiana and a substantial amount of the illegal activity took place in the Southern District of Indiana.  28 USC § 1391.

### VI.  STATEMENT OF CLAIMS

#### A.  Fair Labor Standards Act Claims

44.     Bolden incorporates herein by reference paragraphs 1 through 43 above.

45.     ResCare is an "enterprise" as that term is defined by the FLSA, and ResCare is

covered by the overtime and minimum wage provisions of the FLSA. ResCare is an "employer," as that term is defined by the FLSA. Finally, ResCare is a "person" as that term is defined by the FLSA.

46.    ResCare has violated Bolden's rights and the rights of all members of the nationwide Plaintiff Class to be properly paid overtime wages in a manner required by the FLSA. ResCare has committed overtime violations by failing to pay Bolden and her similarly situated coworkers for all hours of work at the full and proper overtime rate of compensation.

47.    ResCare has repeatedly violated the FLSA's overtime provisions by not paying Bolden and members of the Plaintiff Class at the full, required overtime compensation rate for all hours worked over 40 in a work week.

48.    ResCare's failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects ResCare to a three year statute of limitations.

49.    Bolden and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for ResCare's violations of their rights under the Fair Labor Standards Act.

### B. Indiana Wage Payment Statute Claims

50.    Bolden incorporates herein by reference paragraphs 1 through 49 above.

51.    Bolden has a statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and she is the Plaintiff who represents the same or similar interests of all former Indiana-based ResCare employees who voluntarily resigned from employment and who

were not paid accrued vacation wages after resignation.

52.      By way of this Claim, Bolden is seeking, individually and on behalf of members

of the Plaintiff Class of former Indiana-based ResCare employees, all available damages,

including all unpaid wages, all underpaid wages, all available liquidated (treble damages), all

attorney's fees, costs and expenses, plus any other damage to which Bolden and her fellow

Plaintiff Class members may be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Bolden

is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid

vacation wages, plus all available damages, including, but not limited to, double the amount of

wages due as an additional monetary damage, plus all attorney's fees, costs and expenses.

### VII.  PRAYER FOR RELIEF

WHEREFORE, Bolden respectfully requests that the Court enter judgment against

ResCare, and issue all available relief to her and to all eligible members of the Plaintiff Class,

including, but not limited to, the following:

1.      All damages available under the FLSA, including all unpaid overtime wages, all
liquidated damages, and payment of all reasonable attorney's fees, costs and
expenses;

2.      All unpaid vacation wages;

3.      All statutory damages under I.C. 22-2-5-2, including, but not limited to, all
unpaid vacation wages, all liquidated damages, costs, and attorney's fees;

4.      All reasonable attorney's fees and expenses;

5.      Costs;

6.      Prejudgment interest, if available; and

14

7.      Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com